The State *v.* Carabetta.

THE STATE OF CONNECTICUT *vs.* JOSEPH CARABETTA.
THE STATE OF CONNECTICUT *vs.* ROCCO FEMIA.

Third Judicial District, Bridgeport, April Term, 1927.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

When an appeal is taken by the State in a criminal case under § 6648
of the General Statutes, the permission of the presiding judge
must be asked and secured, and a formal record made thereof,
at the time of the judgment; and the accused, if in custody,
should then be admitted to bail.

This is the practice outlined by this court in *State* v. *Lee*, 65 Conn.
265, it has since been generally followed by prosecuting authori-
ties, and is the only course which is consistent with the rights of
the accused, the just interests of the State, and the demands of
orderly procedure.

When an accused is acquitted and no permission to appeal is re-
quested by the State, it is his privilege to move for a discharge
and the duty of the court to discharge him. His bail is thereby
automatically released, and any further proceedings against him
for the same crime would constitute double jeopardy.

When an indictment or information is held insufficient, the court
may hold the accused until the State has had an opportunity to
arraign him upon a fresh charge, and the bail theretofore given
will continue in force pending such arraignment.

Argued April 19th—decided May 4th, 1927.

INFORMATION charging the accused with the crime of
statutory arson, brought to the Superior Court in New
Haven County and tried to the jury before *Dickenson,
J.;* verdict and judgment of not guilty, and appeal by
the State. In this court the accused filed a plea in
abatement to the appeal, to which the State demurred.
*Demurrer overruled.*

*Benjamin D. Winner,* Assistant State's Attorney, for
the appellant (the State).

*Philip Pond,* with whom was *Daniel J. Danaher,* for
the appellees (the accused),

WHEELER, C. J. The plea in abatement recites that the judgment was entered on October 29th, 1926, that the permission of the presiding judge to take an appeal was granted on January 1st, 1927, more than two months later, that all proceedings relative to the appeal—the filing of notice of appeal, request for a finding, and the finding—were had before any permission was granted to the State to appeal, and that no permission was granted within a reasonable time from the entry of the verdict and judgment. From the record it appears that the draft-finding was filed November 22d, 1926, and the finding filed December 30th, 1926.

The State demurred upon the grounds that it had duly filed its notice of appeal and request for a finding within the time prescribed by the statutes, that it received permission to appeal from the presiding judge prior to the actual appeal and that the permission to appeal from the verdict and judgment were recorded and thereupon became a part of the files and records in these cases.

The right of the State to appeal in criminal cases to this court did not exist at common law and was first given by the statute of 1886, "with the permission of the presiding judge, . . . in the same manner and to the same effect as if made by the accused." In *State* v. *Lee,* 65 Conn. 265, 282, 30 Atl. 1110, the permission of the presiding judge did not appear of record, but we held that the finding of facts by the presiding judge, for the purpose of appeal, was sufficient evidence that the necessary permission was granted, but we were careful to state that the formal permission should not be omitted from the record, and thereupon we stated the proper practice governing the request for the granting of and the recording of permission in these

words: "We think as a matter of practice certainly, that in all appeals under § 1637 [now § 6648], the permission of the presiding judge should be asked and granted, and a formal record thereof made at the time of the judgment; and that the accused, if in custody, should then be admitted to bail." Since that time we have never been called upon to again consider the question of practice which was thus formulated in *State* v. *Lee.* In the thirty-two years intervening, ten appeals to this court have been taken by the State, three from judgments in the Superior Court, two of which conformed strictly to the practice outlined in *State* v. *Lee,* and seven from judgments of the District and Common Pleas Courts, four of which conformed to the practice of *State* v. *Lee.* In the other cases, from seven to eighteen days intervened between the date of judgment and the permission of the court to appeal. Three of these appeals were from a judgment upon a demurrer, the other an appeal for errors in the charge. A practice which was carefully considered by this court over thirty years ago ought not to be lightly changed at this day, particularly when State's Attorneys and prosecutors have as a general rule conformed to it.

There are, too, considerations of vital import to the accused as well as the State which led to the adoption of this practice and which are equally potent to forbid departure from it. When the accused is acquitted, it is his privilege to move for discharge and the duty of the court to discharge the accused unless the State shall move for permission to appeal. When the court orders or permits the discharge, the accused is at liberty to depart, a free man, to go whithersoever he may choose. If he shall go to another jurisdiction, he may not be brought again within this jurisdiction by process of extradition or otherwise since there is no

longer a criminal charge against him. He cannot be put in jeopardy again for the crime of which he has been acquitted and discharged by the court. If he remains within the State, he cannot be again apprehended for a crime of which he has been acquitted and discharged. His bail would be discharged by his discharge by the court. 6 Corpus Juris, 1031. It of course cannot be brought to life again for the reason that the prosecutor has thereafter reached the determination to prosecute an appeal and has secured the permission of the presiding judge to so appeal. The grievous injustice to the accused of acquitting him of the crime of which he stands charged and of discharging him from the court and sending him out into the world a free man and then, two months later, when the State secures the permission of the court to appeal, compel the free man to again become the accused and to defend himself in a court in which no charge against him is in existence, and for a crime which so far as he is concerned has no existence, is patently manifest,—that would be double jeopardy. The same reasons do not hold when the indictment or information is held insufficient. The court may in that case hold the accused until the State has had an opportunity to arraign the accused upon a fresh charge and the bail theretofore given will not be discharged until the accused shall be thus arraigned. 1 Bishop's New Criminal Procedure (2d Ed.) § 264k, p. 228.

In order to protect the rights of both the State and the accused and to have an orderly procedure, it was essential that the practice under the statute of 1886 should require the State's Attorney or prosecutor to secure from the presiding judge permission to appeal at the time the judgment of acquittal was rendered. The statute necessarily contemplated this procedure; there

The State *v.* Carabetta.

was no other course which would have fairly protected the rights of the State and of the accused. We were careful to provide in the practice outlined that upon the grant of permission to appeal the accused, if in custody, should then be admitted to bail. This very definitely indicates that the grant of permission is something more than a mere formality, in fact a judicial determination, one consequence of which is that the accused, if in custody, is then admitted to bail. It recognizes the right of the accused to bail pending the appeal and it assumes that the accused is either on bail or in custody when the permission is granted. It is said that this deprives the prosecutor of the opportunity to investigate and determine whether to take the appeal and forces him to forthwith action. The instances where he will not know at the time of the judgment whether or not he should appeal will be few. The consequences to State and accused compel this practice, and the incidental occasional inconvenience to the prosecutor must be accepted for the larger public interests involved—the just interests of the accused and of the State and of the orderly procedure which alone can make this statute effective and serviceable.

The contention of the State's Attorney that he should not be required to determine whether he should appeal until after he has seen the finding filed by the court, might mean that a period of weeks and perhaps months had elapsed since the judgment of acquittal and discharge of the accused. Meantime the discharged accused may be in another hemisphere. Until the present time that contention has never been made, nor that practice put in force. The latest instances of appeals by the State from judgments in the Superior Court show the strictest compliance with the practice as outlined in *State* v. *Lee, supra,* viz.: *State* v. *Torel-*

*lo,* 100 Conn. 637, 124 Atl. 375, and *State* v. *Carroll,* 97 Conn. 598, 117 Atl. 694. "Statutes authorizing an appeal in a criminal case must be strictly followed." 17 Corpus Juris, 14; *State* v. *Caplan,* 85 Conn. 618, 84 Atl. 280.

It is not necessary that the prosecutor shall at the moment of judgment reach a final determination that he will prosecute the appeal. It is necessary that he determine at the time of the judgment that he ought to ask the court for permission to take such appeal, so that the accused shall not be forthwith discharged; to that he is entitled unless the prosecutor shall move for such permission. If permission be granted, he will not be entitled to discharge until the appeal has been determined in his favor, or withdrawn.

The demurrer is overruled.

In this opinion the other judges concurred.