## State of Connecticut *v.* S & R Sanitation Services, Inc. (12746)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and NOVACK, Js.

Argued November 6, 1986—decision released February 17, 1987

*John J. Dropick,* assistant state's attorney, with whom was *Judith Rossi,* deputy assistant state's attorney, for the appellant (state).

*James H. Throwe,* for the appellee (defendant).

*Joseph I. Lieberman,* attorney general, and *Richard F. Webb,* assistant attorney general, filed a brief as amicus curiae.

ARTHUR H. HEALEY, J. The defendant, S & R Sanitation Services, Inc. (S & R), was charged by substitute information with nine counts of operating without a permit for collection on or about nine dates in

August and September, 1983, in violation of General Statutes § 22a-454.[1] Upon the defendant's timely motion, the trial court dismissed the substitute information. The state has appealed the judgment claiming that the court erred in its conclusions and that the substitute information, therefore, should be reinstated.

Before we may address the merits of the state's claims, it is necessary to resolve an issue involving our subject matter jurisdiction over this appeal. The defendant claims that this appeal by the state is not properly before us because the trial court denied the state permission to appeal. We have jurisdiction to determine our jurisdiction. See, e.g., *Standard Tallow Corporation* v. *Jowdy*, 190 Conn. 48, 57 n.7, 459 A.2d 503 (1983); *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 227, 429 A.2d 478 (1980).[2]

---

[1] General Statutes (Rev. to 1983) § 22a-454 provides: "PERMIT FOR COLLECTION, STORAGE OR TREATMENT, CONTAINMENT, REMOVAL OR DISPOSAL OF CERTAIN SUBSTANCES, MATERIALS OR WASTES: SUSPENSION OR REVOCATION. STUDY OF DISPOSAL METHODS. No person shall engage in the business of collecting, storing or treating waste oil or petroleum or chemical liquids or hazardous wastes or of acting as a contractor to contain or remove or otherwise mitigate the effects of discharge, spillage, uncontrolled loss, seepage or filtration of such substance or material or waste nor shall any person, municipality or regional authority dispose of waste oil or petroleum or chemical liquids or waste solid, liquid or gaseous products or hazardous wastes without a permit from the commissioner. Such permit shall be in writing, shall contain such terms and conditions as the commissioner deems necessary and shall be valid for a fixed term not to exceed five years. No permit shall be granted unless the commissioner is satisfied that the activities of the permittee will not result in pollution or contamination or emergency. The commissioner may suspend or revoke a permit for violation of any term or condition of the permit. The commissioner may conduct a program of study and research and demonstration, relating to new and improved methods of waste oil and petroleum or chemical liquids or waste solid, liquid or gaseous products or hazardous wastes disposal. For the purposes of this section, collecting, storing, or treating of waste oil, petroleum or chemical liquids or hazardous waste shall mean such activities when engaged in by a person whose principal business is the management of such wastes."

[2] There is a fundamental difference between this court's power to entertain an appeal and the determination of the merits of the appeal itself. See,

The background circumstances disclosed by the record relevant to the determination of our jurisdiction include the following. On December 21, 1983, the defendant was charged with one count of the crime of operating without a permit for collection on or about August 24, 1983, in violation of General Statutes § 22a-454. Some time later, the state filed a substitute information charging S & R with nine counts of operating without a permit for collection in violation of General Statutes § 22a-454 on or about nine dates in August and September, 1983. The state maintained that the charges stemmed from the defendant's conduct in collecting a chemical liquid, latex waste from a Windsor Locks corporation, and transporting it to S & R's place of business in South Windsor. The defendant pleaded not guilty on January 18, 1984, and elected a jury trial. At that time, the defendant filed a motion for a bill of particulars.[3]

On February 3, 1984, the defendant filed a motion to dismiss the charges.[4] Briefs were filed, and on

e.g., *Sullivan* v. *Board of Police Commissioners,* 196 Conn. 208, 213, 491 A.2d 1096 (1985); *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 679, 485 A.2d 1272 (1984). "The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage of the proceedings. . . . [I]f at any point it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed." (Citations omitted.) *Laurel Park, Inc.* v. *Pac,* supra, 678 n.1. The record before us clearly requires that we examine the threshold question of our jurisdiction to entertain this appeal and to dismiss it if we lack jurisdiction. *State* v. *Phillips,* 166 Conn. 642, 644, 353 A.2d 706 (1974); *Hoberman* v. *Lake of Isles, Inc.,* 138 Conn. 573, 574, 87 A.2d 137 (1952); *State* v. *Carter,* 3 Conn. App. 235, 236, 486 A.2d 1138 (1985).

[3] The state first filed a bill of particulars on the nine counts on January 25, 1984.

[4] The defendant's motion to dismiss stated the following:

"The defendant, S & R Sanitation Service, Inc., respectfully moves the court to dismiss the charges pending against it on the following grounds:

"1. That the information as set forth in the bill of particulars fails to set forth that the defendant corporation, wilfully or with criminal negligence, violated a provision of the statute.

March 8, 1984, the motion was argued before the court, *Noren, J.* On May 10, 1984, the trial court filed an eight page memorandum of decision in which it denied the motion to dismiss. In this decision, the court rejected the first claim raised in the motion to dismiss, that the information failed to contain "an allegation of criminality," concluding that the bill of particulars filed subsequent to the motion to dismiss satisfied this requirement.[5] The court also rejected the defendant's argument that the state, by electing to proceed in a civil suit through the department of environmental protection, was precluded from pursuing the criminal prosecution under principles of collateral estoppel. The court noted the existence of a factual dispute as to whether the material allegedly transported by the defendant without a permit was "a liquid chemical," the transportation of which was proscribed by the statute. The court opined that the defendant could not demonstrate that the issue it sought to foreclose on the

"2. That the State of Connecticut has elected its remedy by filing a civil action against the defendant in CV82-0270920S, Stanley J. Pac, Commissioner of Environmental Protection vs. S & R Sanitation Service, Inc., Superior Court Judicial District of Hartford, October 25, 1983. This case has been disposed of by entry of a stipulated judgment on January 30, 1984, in which the defendant agreed to cease all transportation and storage of latex waste in this area and to remove the stored latex within 60 days in accordance with an approved method to be submitted to the Water Compliance Division of the D.E.P. The court also ordered the defendant to pay the sum of $3,000.00 penalty in the storage case and $1,000.00 in the transportation of liquid latex case. These amounts were in lieu of a fine and for the costs and expenses incurred by the State in the investigation and prosecution of these cases.

"3. That to criminally charge the defendant now constitutes double jeopardy in violation of the Connecticut and United States Constitutions.

"4. That the materials transported are neither toxic or hazardous nor are they a liquid chemical but rather waste latex and water which can be disposed of in a municipal dump once much of the water is removed."

[5] The court file indicates that on March 8, 1984, the state filed a second bill of particulars which, according to the trial court, effectively mooted out the first ground of the motion to dismiss, i.e., that the information failed to contain "an allegation of criminality."

motion to dismiss had necessarily been resolved in the earlier civil proceeding brought against the defendant by the commissioner of environmental protection, which had been disposed of by a stipulated judgment on January 30, 1984.[6] After a thorough discussion of collateral estoppel, the court denied the motion.

[6] The printed record in this case discloses, inter alia, the following release, reference to which is made in the briefs of both the state and the defendant:

"RELEASE

"TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, GREETING:

"KNOW YE, that the Commissioner of the Department of Environmental Protection for and in consideration of the sum of One Thousand Dollars ($1,000) lawful money of the United States of America to it in hand paid by S & R Sanitation Service, Inc., a corporation with its principal place of business in South Windsor, Connecticut, the receipt whereof is hereby acknowledged, has remised, released and forever discharged, and by these presents does for himself and his successors, remise, release and forever discharge the said S & R Sanitation Service, Inc., its successors and assigns, of and from all, and all manner of action and actions, cause and causes of actions, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever, in law, in admiralty, or in equity which against S & R Sanitation Service, Inc., said Commissioner of the Department of Environmental Protection ever had, now has or which he or his successors hereafter can, shall or may have for, upon or by reason of violations alleged to have taken place since June 30, 1981, for the transport of any type of waste without a permit as required by Section 22a-454 of the Connecticut General Statutes.

"This Release may not be changed orally.

"IN WITNESS WHEREOF, the said Commissioner of Environmental Protection signs these presents on the 28th day of February, 1984.

"Signed, sealed and delivered in the presence of:

"[signature illegible]

"[signature illegible]

"COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION

"BY /s/
Stanley J. Pac
Commissioner"

Thereafter, the defendant filed a motion to reargue the motion to dismiss on two grounds. One ground was directed to the collateral estoppel aspect. There the defendant alleged that it was now admitting that the material involved was "a chemical liquid" under the statute for the purposes of the judgment in the civil case.[7] Permission to reargue was granted. After reargument and the filing of a supplemental brief, the court granted the motion to dismiss. In its supplemental memorandum on the motion to dismiss, the court said, inter alia, that during reargument and in the supplemental brief, "the defendant admitted that the material in question here, as in the prior civil action, is liquid chemical, or in the words of the statute, that the latex materials are chemical liquids." It therefore decided that the other requirements for the application of collateral estoppel were met and it granted the motion to dismiss.

The state then moved for permission to appeal.[8] The state based its motion on General Statutes § 54-96[9] and *State* v. *Avcollie,* 174 Conn. 100, 110, 384 A.2d 315

---

[7] On this branch of the matter, the defendant's motion to reargue alleged the following:

"With respect to the question of collateral estoppel, the defendant has admitted for the purposes of that issue the fact that the material (i.e. liquid latex) was a chemical liquid under the statute for the purposes of the Judgment which was entered in the civil case so that the requirement of the collateral estoppel doctrine was satisfied and under the reasoning of the Court, provides the basis for the dismissal of the information."

[8] The state's motion for permission to appeal was the following:

"The State of Connecticut hereby moves the court for permission to appeal dismissal of the captioned case, contained in a judgment and memorandum of decision of the court, *Noren, J.,* dated September 28, 1984, and attached hereto as Exhibit A.

"This motion is brought pursuant to General Statutes, section 54-96 and *State* v. *Avcollie,* 174 Conn. 100, 110, 384 A.2d 315 (1977). No previous motion of this kind has been brought in this action."

[9] General Statutes § 54-96, entitled "Appeals by the state from superior court in criminal cases," provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of crimi-

(1977).[10] The state thereafter filed a "Motion for Further Articulation" with the trial court requesting further articulation of the legal basis for applying collateral estoppel, the factual basis for its conclusion that "the other requirements for the application of collateral estoppel [were] met," the basis for the conclusion "that any issues have been resolved in the defendant's favor in prior litigation" and "[w]hether the court has concluded that any issues were fully and fairly litigated when only a stipulated judgment has entered, and the basis for that conclusion." The court, in a four page memorandum of decision, dated January 15, 1985, denied the motion to appeal and granted the motion for further articulation. In its articulation, the court said: "It is the understanding of this Court that the factual allegations which were the subject of that related civil matter are the same as those which form the basis of the charges in the instant criminal action."[11]

On February 16, 1985, the state filed, pursuant to Practice Book § 3107 (now § 4053), a "Motion for Review" in the Appellate Court. In this motion, the state "move[d] for review and reversal of the decision of the trial court denying it permission to appeal from its decision granting the defendant's motion to dismiss the above-captioned case." On March 26, 1985, the Appellate Court directed that the motion for review and the relief requested therein be granted. Pursuant

nal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

[10] The defendant objected to the motion.

[11] An examination of the transcript of March 8, 1984, at the time of the arguments before the court, *Noren, J.*, on the motion fairly discloses that this was conceded by the state. It is fair to say, however, that the state's position was, and is, that, even conceding this, it still does not preclude the criminal action undertaken against the defendant.

to Practice Book § 3004A (now § 4023), the case was transferred to this court on May 28, 1985.[12]

"The right to an appeal is not a constitutional one." *Chanosky* v. *City Building Supply Co.,* 152 Conn. 449, 451, 208 A.2d 337 (1965). "There is . . . no common-law right of appeal by the state in criminal matters. . . . The right of the state to appeal in criminal cases is granted only by statute."[13] *State* v. *Falzone,* 171 Conn. 417, 417–18, 370 A.2d 988 (1976); see *State* v. *Audet,* 170 Conn. 337, 340, 365 A.2d 1082 (1976); *State* v. *Carabetta,* 106 Conn. 114, 115, 137 A. 394 (1927). "As we noted in *State* v. *Carabetta,* [supra, 119]: ' "Statutes authorizing an appeal in a criminal case must be strictly followed." 17 Corpus Juris, 14; *State* v. *Caplan,* 85 Conn. 618, 84 Atl. 280 [1912].' The conditions of the statute must therefore be met to have a valid appeal." *State* v. *Audet,* supra. "The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. [Id., 342]; *Kennedy* v. *Walker,* 135 Conn. 262, 266, 63 A.2d 589, aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93 L. Ed. 1715 (1948)." *State* v. *Curcio,* 191 Conn. 27, 30, 463 A.2d 566 (1983).

In this case, the right of appeal exists only by virtue of General Statutes § 54-96. That statute provides, in part, that appeals "may be taken by the state, *with the permission of the presiding judge.* " (Emphasis added.)

---

[12] On April 29, 1985, the state filed a second motion for further articulation asking the trial court to articulate whether its motion to dismiss the charges was with prejudice. On May 16, 1985, over the defendant's objection, the court filed a memorandum of decision stating that the dismissal was with prejudice.

[13] "[U]nder settled precedent of [the United States Supreme] Court, the Government may take an appeal from an adverse decision in a criminal case only if expressly authorized by statute to do so." *Arizona* v. *Manypenny,* 451 U.S. 232, 238, 101 S. Ct. 1657, 68 L. Ed. 2d 58, reh. denied, 452 U.S. 955, 101 S. Ct. 3100, 69 L. Ed. 2d 965 (1981).

The words of a statute are to be given their commonly approved meaning, unless a contrary intent is expressed. General Statutes § 1-1; *State* v. *Smith,* 194 Conn. 213, 221, 479 A.2d 814 (1984); *State* v. *Kish,* 186 Conn. 757, 764, 443 A.2d 1274 (1982). The term "permission" as used in § 54-96 needs no judicial gloss to demonstrate that it means the obtaining of consent and authority of the court; no automatic *right* to appeal is conferred upon the state. The statutory language unmistakably confers upon the trial court the choice of granting or withholding the appeal privilege depending upon the circumstances of each case. It is apparent from the permissive language of the statute that the legislature did not intend that permission to appeal be granted in every case in which it is sought.

We have recently said: "The provision that permission from the . . . judge be obtained was a limitation on the right of appeal granted the state. . . . This condition is generally considered to be a prerequisite to appeal by the state. . . . However, as the dominant intention of the legislature was to extend the right of appeal to the state, the limitation placed upon that right is one which must be so exercised as to avoid abuse and unreasonable consequences." *State* v. *Avcollie,* supra, 109–10. The permission of the trial judge is a condition which is a "prerequisite" to the existence of the state's right of appeal in a criminal matter under § 54-96. *State* v. *Avcollie,* supra, 109. It follows, therefore, that without that permission there is no viable appeal unless the court's denial of permission is " 'so unreasonable as to constitute an abuse of discretion.' " Id., 110.

This case reaches us in an unusual posture. As already noted, the Appellate Court granted the state's motion for review and the relief requested therein; its order reversed the trial court's denial of permission to appeal and thus created an appeal where one had not there-

tofore existed. The Appellate Court's order, which was not accompanied by a memorandum of decision, impliedly determined that the trial court had abused its discretion in denying the state's motion for permission to appeal.

The defendant argues that the Appellate Court erred in reversing the trial court because, having invoked *Avcollie* and § 54-96, the state did not meet the standard set out in *Avcollie*. Maintaining that it has had no opportunity to have a review of the Appellate Court order, which created an appeal where none existed before, the defendant urges us to inquire whether the trial court did abuse its discretion. The state argues that the trial court's denial did violate *Avcollie* and, "[m]oreover, the 'extreme abuse of discretion' test expounded by the defendant is a standard of review and has no bearing on reviewability, which is the issue here."[14] In addition, the state argues, and we agree,

---

[14] The state urges us not to consider the defendant's untimely attack on the standard employed by the Appellate Court because the defendant failed to object to the state's motion for review in that court and because it failed to file a motion to dismiss the appeal. In addition, the state asks this court to note that "implicit in the Appellate Court's order was a determination that the denial of permission to appeal was an abuse of discretion or would lead to unreasonable consequences. See *State* v. *Avcollie,* [174 Conn. 100, 111, 384 A.2d 315 (1977)]; *State* v. *Bellamy,* 4 Conn. App. 520, 523, 495 A.2d 724 (1985)."

These arguments are not persuasive. It is true that the defendant did not file an objection to the state's motion for review, but its position cannot be suggested to be one of acquiescence given its written objection together with the supporting documents it had earlier filed in the trial court. In addition, the defendant did not file a motion to dismiss the appeal. This presents no bar to our jurisdictional inquiry in this case for at least two reasons. First, as this opinion indicates, we are entitled to consider the entire proceedings below in order to determine if this court has jurisdiction. Second, our general supervisory power over appeals referred to in Practice Book § 3096 (now § 4183) is peculiarly applicable in the circumstances of this case.

While we deal elsewhere in this opinion with the impact of *Avcollie,* we will comment here on the state's citation of *Bellamy.* In *Bellamy,* the Appellate Court was, as is this court, the third court involved. In that case, the trial court had denied the state's motion to appeal. Thereafter, the Appel-

that this court has "the general supervisory power to protect its jurisdiction to hear appeals" and that this "power cannot be defeated by the arbitrary action of a trial court." Accordingly, we proceed with our jurisdictional inquiry which brings us, as it must, to the issue of whether the trial court abused its discretion for, if it did, then a viable appeal exists and, if it did not, such an appeal does not exist. Put another way, the jurisdictional predicate for this appeal under § 54-96 exists only if the trial court abused its discretion in denying the state's motion for permission to appeal. We conclude that there was no such abuse in this case and, therefore, dismiss this appeal.

We agree with the state and the defendant that *Avcollie* lays down the standard to be followed in this case. Recognizing that "[t]he court's granting or denial of the state's motion to appeal constitutes a 'judicial determination' within the court's discretion" and that "[o]rdinarily" we will not review rulings made in the exercise of a court's discretion; *State* v. *Avcollie*, supra, 110; the *Avcollie* court, nevertheless, said that "[i]n

late Session of the Superior Court granted the state's motion for review and set aside the trial court's denial and the state filed its appeal in the Appellate Court. The *Bellamy* court, unlike the trial court in this case, even after the Appellate Session granted the state the right to appeal, did not offer any reasons for its denial of permission to appeal. The Appellate Court in *State* v. *Bellamy,* supra, 523, noted that *"[i]mplicit* in the decision of the Appellate Session was the determination that the denial of permission to appeal was, *under the circumstances,* so arbitrary as to be an extreme abuse of discretion, a determination with which we agree." (Emphasis added.)

The case before us is not *Bellamy* because it does not reflect a clear abuse of discretion. In this case, the trial court wrote a long memorandum of decision. In response to the state's motion, the court further articulated its decision. Therefore, the "implicit" abuse of discretion opined in *Bellamy* has no place in the explicit reasoning of the trial court decision which is attacked in this case. Moreover, unlike *Bellamy,* its "implicit" ratiocination cannot summarily lead here to the conclusion that "the denial of permission to appeal was, under these circumstances, so arbitrary as to be an extreme abuse of discretion . . . ." Id.

those cases of manifest abuse . . . where injustice appears to have been done, this court will grant review to determine whether the court's exercise is 'so unreasonable as to constitute an abuse of discretion.' " Id. The "judicial determination" we spoke of in *Avcollie,* which is within the court's discretion, is more than "a mere formality" as is evidenced by its reference to *State* v. *Carabetta,* supra. In striking down the trial court's earlier denial of the state's motion to appeal in *Avcollie,* we determined that "just such a clear and extreme abuse of discretion is evident." *State* v. *Avcollie,* supra, 111. In doing so, we said that even the trial court itself admitted "that there was no considered reason for denying the state the opportunity to appeal" and, therefore, we held that "its action [was] arbitrary and an abuse of its discretion . . . ." Id.

Inherent in the concept of judicial discretion is the idea of choice and a determination between competing considerations. Discretion could generically be said to apply to issues which do not yield a fundamentally empirical yes or no answer. The very core consideration of choice in discretion logically means that neither party is absolutely entitled to have that discretion exercised in its favor. We must determine whether the trial court's denial of permission to appeal was an abuse of its discretion. We conclude that it was not in this case. In reaching this conclusion, we weigh heavily the fact that in this case, unlike both *Avcollie* and *State* v. *Bellamy,* 4 Conn. App. 520, 495 A.2d 724 (1985), the trial court did give "considered reason[s]"; see *State* v. *Avcollie,* supra; and did so at length and still later articulated them on request of the state. We hasten to add that our conclusion does not imply that we would have resolved the merits in the same fashion as the trial court. But the question of determining whether a trial court has abused its discretion does not depend upon whether a reviewing court would have reached the

same conclusion. See, e.g., *Bringhurst* v. *Harkins,* 32 Del. 324, 122 A. 783 (1923); *Rogers* v. *Lyle Adjustment Co.,* 70 N.M. 209, 213–14, 372 P.2d 797 (1962); *Abbenhaus* v. *Yakima,* 89 Wash. 2d 855, 858–59, 576 P.2d 888 (1978).

We are aware, as the state argues, that the deference given to the trial court's exercise of discretion should not be interpreted as meaning that its exercise is insulated from meaningful review. While another trial court might have resolved the competing considerations differently, given the analysis of the trial court in this case, we cannot say its considered reasons constituted "arbitrary" or "unreasonable" action. See *State* v. *Avcollie,* supra. "Arbitrary" means "[w]ithout adequate determining principle . . . not governed by any fixed rules or standard." Black's Law Dictionary (5th Ed.). "Unreasonable" means "irrational." Id. One court aptly set out this reasoning: "Where there is room for two opinions, an action taken after due consideration is not arbitrary or capricious even though a reviewing court may believe it to be erroneous." *Abbenhaus* v. *Yakima,* supra. The memoranda filed by the trial court disclose a unique fact pattern, in both the civil and criminal aspects of this matter, which are admittedly based on identical facts. Despite the claims of the state to the contrary, even though we do not reach the merits, an examination of the trial court's memorandum on the issue of granting or withholding of the required permission to appeal discloses that the trial judge recognized his obligation "to play fair with the system." See M. Rosenberg, "Judicial Discretion of the Trial Court, Viewed from Above," 22 Syracuse L. Rev. 635, 665 (1971). We do not see evident in this case, as we did in *Avcollie,* a "clear and extreme abuse of discretion" or a case "where injustice appears to have been done." *State* v. *Avcollie,* supra.

There was no abuse of discretion by the trial court in denying the state's motion for permission to appeal under § 54-96. Because that permission is crucial under the statute for an appeal to be viable and, a fortiori, for our subject matter jurisdiction, we have no such jurisdiction under the circumstances of this case. This requires that we dismiss the appeal.

Accordingly, the appeal is dismissed.

In this opinion, PETERS, C. J., CALLAHAN and NOVACK, Js., concurred.

SHEA, J., dissenting. Because I find no valid reason for the denial of the state's motion for permission to appeal in either the memoranda of the trial court or the majority opinion, I agree with the conclusion of the Appellate Court when it granted the state's motion for review that the trial court abused its discretion in denying such permission. Although the majority opinion implies that the trial court gave reasons for its denial of permission to appeal which would negate any "abuse of discretion," it does not specify what these reasons were or advance any reasons for such denial approved by the majority. The trial court did give reasons for its initial decision denying the motion to dismiss and also for its subsequent granting of the motion following reargument. The court filed an additional memorandum of decision responding to the state's motion for further articulation of the reasons for this reversal and also denying its motion for permission to appeal. All but the last paragraph of that memorandum simply elaborate upon the court's reasons for previously granting the motion to dismiss as requested in the motion for further articulation. The last paragraph is as follows: "Fairness, the bedrock upon which is based the doctrine of collateral estoppel, demands an end to these proceedings. And there will be no seismic result to Cardozo's edifice of justice; *Palko* v. *Connecticut*, 302

U.S. 319, 328, 82 L. Ed. 288, 58 S. Ct. 149 (1937); as the Court exercises the discretion upon which he said the constitutional validity of our statute depends; Id.; in the absence of the convoluted facts and chronology of [*State* v. *Avcollie,* 174 Conn. 100, 384 A.2d 315 (1977)], and in the absence of its admission of no considered reason for denying the state the opportunity to appeal."

To the extent that this paragraph relies upon the doctrine of collateral estoppel as demanding "an end to these proceedings," it necessarily implicates the merits of the court's decision to dismiss the prosecution because of the stipulated judgment in the civil action and the terminology used in the release given by the commissioner of environmental protection in settlement of any civil claims against the defendant for water pollution. The remainder of the paragraph, as supplemented by a footnote,[1] seems to question the present constitutional viability of General Statutes § 54-96, the statutory authority for the state to appeal on questions of law. It concludes that, because the "convoluted facts and chronology" of *State* v. *Avcollie,* supra, where the trial judge had expressly conceded there was no good reason to deny permission to appeal, are absent, permission to appeal should be denied.

To the extent that the opinion may rely on the elaborate discussion by the trial court of the grounds upon which it dismissed the information as its statement of "considered reason[s]" for denying permission to appeal, the implication is that, so long as the mem-

---

[1] The footnote referenced at the end of the quoted paragraph of the trial court's memorandum was as follows: "In light of the myriad and vast changes which have taken place in the field of constitutional law in the past nearly half century, and in light of the rationale for the decision in *Palko* v. *Connecticut,* 302 U.S. 319, 82 L. Ed. 288, 58 S. Ct. 149 (1937), it is intriguing to contemplate the fate of general statutes section 54-96 if considered today by the United States Supreme Court."

orandum of decision gives more than cursory treatment to the issues, a trial judge has absolute discretion to deny permission to appeal under the statute. The legislature could never have intended to vest in a trial judge such arbitrary authority to preclude appellate review of his own decisions. It is fundamental that one cannot be a judge in his own case. Unless this principle is deemed to have been wholly disregarded in § 54-96 by making the trial judge's determination conclusive, so long as the record demonstrates that sufficient judicial effort has been devoted to the issues, a denial of permission to appeal cannot properly be based upon the trier's view that his judgment is correct and that any appeal therefrom would be fruitless.

To the extent that the opinion may rely upon the remaining reasons given by the trial court for denying permission to appeal, it seems to imply that such an exercise of discretion is reversible only where there has been an express admission by the trial judge that there is no good reason to deny the appeal, as in *Avcollie*. It is quite evident from the brief comments in the memorandum expressly addressing the motion for permission to appeal that the trial court took a jaundiced view of § 54-96, intimating that its constitutional validity was seriously in question. This plainly erroneous view appears to have been a significant influence in inducing the court to conclude that, unless the "convoluted facts and chronology" of *Avcollie* were duplicated, permission to appeal should be denied.

Neither the trial court nor the majority have taken the view that the issues sought to be raised by the state in this appeal are frivolous. Indeed they are highly significant, involving a question of whether one state agency in pursuing its authorized functions may deliberately or inadvertently invade the exclusive authority of the state's attorney to pursue a criminal prosecution. Nor does the majority opinion suggest any hard-

ship that will be suffered by this corporate defendant or by other persons as a possible ground to support the action of the trial court. I find it incomprehensible, therefore, that the majority chooses to reverse the conclusion of the Appellate Court that the trial court did abuse its discretion in denying permission to appeal rather than address the substantial and unprecedented issues raised.

Accordingly, I dissent.