STATE OF CONNECTICUT *v.* SAMUEL MCMILLAN
(AC 16731)

Spear, Hennessy and Daly, Js.

Argued October 28, 1998—officially released February 9, 1999

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Patrice Palombo*, assistant state's attorney, for the appellant (state).

*Richard E. Condon, Jr.*, assistant public defender, for the appellee (defendant).

*Opinion*

DALY, J. The state appeals following the trial court's denial of the state's motion for permission to appeal pursuant to General Statutes § 54-96.[1] The state claims that the trial court improperly (1) denied the state permission to appeal under § 54-96 and (2) dismissed the information against the defendant on the basis of the failure of the police incident report to establish probable cause for the arrest.

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

The pertinent background is as follows. On April 3, 1996, New Haven police officers made a warrantless entry of the defendant's premises at 178 Hazel Street pursuant to a complaint that a woman was being assaulted. The police officers found narcotics on the premises and on the defendant's person. On April 4, 1996, the defendant was arraigned and charged with six narcotics related offenses.[2]

The trial court, after reading the police incident report, found no probable cause for the defendant's arrest and dismissed the matter, suo moto. Although the state requested "one week"[3] and argued that a finding of no probable cause could justify only releasing the defendant without bond, not dismissal of the case, the

---

[2] The six counts charged violations of the following statutes: (1) possession of narcotics in violation of General Statutes § 21a-279 (a); (2) conspiracy to possess narcotics in violation of General Statutes §§ 53a-48 and 21a-279 (a); (3) sale of narcotics in violation of General Statutes § 21a-277 (a); (4) possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d); (5) sale of narcotics within 1500 feet of a school in violation of General Statutes § 21a-278a (b); and (6) conspiracy to possess narcotics within 1500 feet of a school in violation of General Statutes §§ 53a-48 and 21a-279 (d).

[3] The following colloquy took place during the arraignment.

"The Court: Mr. McMillan, did you understand your rights as I explained them to you?

"The Defendant: Yes.

"The Court: I find no probable cause.

"[Assistant State's Attorney]: Can we have one week?

"[Defense Counsel]: He qualifies, Your Honor.

"The Court: Public defender is appointed.

"[Defense Counsel]: May it be dismissed?

"The Court: Granted.

"[Defense Counsel]: May I ask the basis for that?

"The Court: U.S. Supreme Court.

"[Assistant State's Attorney]: Which allows?

"The Court: It says when no probable cause is found, if he moves to dismiss, he gets dismissed.

"[Assistant State's Attorney]: At the time of arraignment, Your Honor— If I may make a record, please. At the time of arraignment, the only issue before the court is as to probable cause. If there is no probable cause, under State v. Middleton [20 Conn. App. 321, 566 A.2d 1363 (1989)], I believe the

trial court refused to change its ruling or to grant the time requested.

On April 10, 1996, the state filed a motion for permission to appeal, which was denied on April 12, 1996. On April 22, 1996, the state filed a motion for review of the denial. On July 10, 1996, this court ordered the trial court to file an articulation of its decision, and the trial court complied in a memorandum of decision dated October 2, 1996. In its decision, the trial court stated that the record was insufficient to support an appeal, that the court lacked jurisdiction over the defendant and that the state failed to follow the proper procedures. On December 10, 1996, this court dismissed the state's motion for review as improper and granted the state permission to file a late appeal within twenty days and, if such an appeal was filed, to raise as the first issue whether the trial court improperly denied the state permission to appeal under § 54-96. See *State* v. *McMillan*, 43 Conn. App. 698, 703, 685 A.2d 1138 (1996).

On December 23, 1996, the state filed this appeal. On March 2, 1997, the state filed a motion for rectification seeking to include the police incident report as part of the record. On March 11, 1997, the state moved for permission to file a late motion for rectification of the record. The trial court granted the motion for permission and following a hearing, denied the motion for rectification on July 31, 1997. The state moved for review of the denial and this court granted the motion and granted the requested relief on March 18, 1998.

"The right to an appeal is not a constitutional one. *Chanosky* v. *City Building Supply Co.*, 152 Conn. 449, 451, 208 A.2d 337 (1965). There is . . . no common law

appropriate remedy at that point is to release the defendant without bond, not dismiss the matter. It's inappropriate to dismiss at this juncture.

"The Court: I've ruled. Sir, technically, they went about this the wrong way."

right of appeal by the state in criminal matters. . . .
The right of the state to appeal in criminal cases is
granted only by statute. *State* v. *Falzone,* 171 Conn. 417,
417–18, 370 A.2d 988 (1976); see *State* v. *Audet,* 170
Conn. 337, 340, 365 A.2d 1082 (1976); *State* v. *Carabetta,*
106 Conn. 114, 115, 137 A. 394 (1927). As we noted in
*State* v. *Carabetta,* [supra, 119]: Statutes authorizing an
appeal in a criminal case must be strictly followed. 17
Corpus Juris, 14; *State* v. *Caplan,* 85 Conn. 618, 84 Atl.
280 [1912]. The conditions of the statute must therefore
be met to have a valid appeal. *State* v. *Audet,* [supra,
340]. The right of appeal is purely statutory. It is
accorded only if the conditions fixed by statute and the
rules of court for taking and prosecuting the appeal are
met. [Id., 342]; *Kennedy* v. *Walker,* 135 Conn. 262, 266,
63 A.2d 589 [1948] aff'd, 337 U.S. 901, 69 S. Ct. 1046, 93
L. Ed. 1715 [1949]. *State* v. *Curcio,* 191 Conn. 27, 30,
463 A.2d 566 (1983)." (Internal quotation marks omit-
ted.) *State* v. *S & R Sanitation Services, Inc.,* 202 Conn.
300, 307, 521 A.2d 1017 (1987).

As in this case, "the right of appeal exists only by
virtue of General Statutes § 54-96. That statute provides
in part that appeals may be taken by the state, *with
the permission of the presiding judge.* . . . The words
of a statute are to be given their commonly approved
meaning, unless a contrary intent is expressed. General
Statutes § 1-1; *State* v. *Smith,* 194 Conn. 213, 221, 479
A.2d 814 (1984); *State* v. *Kish,* 186 Conn. 757, 764, 443
A.2d 1274 (1982). The term permission as used in § 54-
96 needs no judicial gloss to demonstrate that it means
the obtaining of consent and authority of the court; no
automatic right to appeal is conferred upon the state.
The statutory language unmistakably confers upon the
trial court the choice of granting or withholding the
appeal privilege depending upon the circumstances of
each case. It is apparent from the permissive language
of the statute that the legislature did not intend that

permission to appeal be granted in every case in which it is sought.

"We have recently said: The provision that permission from the . . . judge be obtained was a limitation on the right of appeal granted the state. . . . This condition is generally considered to be a prerequisite to appeal by the state. . . . However, as the dominant intention of the legislature was to extend the right of appeal to the state, the limitation placed upon that right is one which must be so exercised as to avoid abuse and unreasonable consequences. *State* v. *Avcollie*, [174 Conn. 100, 109–10, 384 A.2d 315 (1977)]. The permission of the trial judge is a condition which is a prerequisite to the existence of the state's right of appeal in a criminal matter under § 54-96. [Id., 109.] It follows, therefore, that without that permission there is no viable appeal unless the court's denial of permission is so unreasonable as to constitute an abuse of discretion. Id., 110." (Internal quotation marks omitted.) *State* v. *S & R Sanitation Services, Inc.*, supra, 202 Conn. 307–308.

I

The state first claims that the trial court improperly denied it permission to appeal on the grounds, stated in that court's articulation, that (1) the state did not offer the testimony of the arresting police officer or the arrest report, nor did it request that the arrest report be marked for identification, (2) the prosecutor failed to sign the information pursuant to Practice Book § 36-12[4] and (3) the state failed to indicate its intention to

[4] Practice Book § 36-12 provides: "An information shall be signed by the prosecuting authority. When any person is arrested without a warrant or is issued a summons, the prosecuting authority shall, without unnecessary delay, review the acts complained of and determine whether it appears that there is reasonable cause to believe that an offense has been committed within the jurisdiction of the court and that the person arrested or the person to whom the summons was issued committed the offense. If the

appeal on the date of dismissal of the charges. We agree that none of those reasons justified the trial court's denial.

A

As to the first issue, the trial court maintained that the record consisted only of the unsigned information and that the state did not offer the testimony of the arresting police officer or the arrest report or ask that the report be marked for identification. The trial court concluded that the state did not prepare an adequate record to pursue an appeal. We disagree.

With regard to the absence of testimony, we note that the state need not present such evidence at an arraignment. Practice Book § 37-12 provides in relevant part that a determination of probable cause "shall be made in a nonadversary proceeding, which may be ex parte based on affidavits. . . ." While testimony may be presented at such a hearing, it is not required. Moreover, even though the state did not offer the police incident report or request that the report be marked for identification, our rules of practice establish a procedure for rectifying the trial court record to include necessary material for the proper presentation of the issues raised on appeal. See Practice Book § § 66-5 (motion for rectification) and 66-7 (motion for review of motion for rectification). As we have already noted, the state utilized this procedure to rectify the record to include that report, which neither side disputes was relied on by the trial court in its dismissal of the charges. In light

prosecuting authority determines that reasonable cause exists, it shall, in cases where an information is required, present an information to the court, pursuant to Section 36-11. If the prosecuting authority determines that reasonable cause does not exist, it shall not present the matter to the court, but an entry shall be made on the case papers indicating that prosecution was declined upon authority of this section, and a brief statement shall be made in open court. For purposes of erasure pursuant to the General Statutes, that action shall be deemed a dismissal."

of these circumstances, we conclude that the trial court was not justified in denying the state permission to appeal on the basis of the inadequacy of the record.

## B

The trial court also maintained that there was a lack of jurisdiction over the defendant due to the failure of the prosecutor to sign the information pursuant to § 36-12. The trial court presumed that the prosecutor did not find probable cause to continue the action against the defendant because there are no charges pending against a defendant until the prosecutor signs the information pursuant to § 36-12. General Statutes § 54-46,[5] however, does not require that an information be signed and our case law does not make the signature a jurisdictional requisite.

In *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998), we held that "[t]he more well reasoned and persuasive cases are those that hold that the lack of a required signature on an information or indictment is a waivable, nonjurisdictional defect. Moreover, when we consider the underlying purpose of signatures, the implausibility of the petitioner's claim becomes even more apparent. The significance of a signature appearing on documents . . . lies in the fact that a signature is the name of a person written with his own hand to signify that the writing which precedes accords with his wishes or intentions. . . . The signature to a writing is placed there, moreover, for the purpose of authenticating it. . . . *Fidelity & Casualty Co.* v. *Constitution National Bank*, 167 Conn. 478, 491, 356 A.2d 117 (1975). Authentication of a document is the primary

---

[5] General Statutes § 54-46 provides: "For all crimes charged by the state on or after May 26, 1983, the prosecution may be by complaint or information. For all crimes punishable by death or imprisonment for life charged by the state before May 26, 1983, the prosecution shall be by indictment."

purpose of a signature requirement. . . . There is no claim here that the prosecuting official lacked authority. By the very act of pursuing the charges to conviction, the prosecutor authenticated the information even more effectively than his signature could have done.

"Absent a statutory or case law requirement that the information be signed by a prosecutor and where the actual authority of the prosecutor is unquestioned, common sense dictates that we treat such a lack of signature as a nonjurisdictional defect. That conclusion is further compelled by the rationale of the cases from our sister jurisdictions that so hold." (Citations omitted; internal quotation marks omitted.) *Blakeney* v. *Commissioner of Correction*, supra, 47 Conn. App. 580–81.

In this case, the prosecutor whose name was stamped on the information was the same prosecutor who pursued the charges listed on that information at the arraignment. We conclude, therefore, that the prosecuting authority's failure to sign the information did not deprive the trial court of jurisdiction.

C

The trial court's final reason for denying the state permission to appeal is the state's failure to indicate its intention to appeal on the date of the dismissal of the charges; instead, the state waited six days before making such a request. The trial court relied on *State* v. *Carabetta*, 106 Conn. 114, 137 A.2d 394 (1927), *State* v. *Tucker*, 23 Conn App. 559, 583 A.2d 139 (1990), and *State* v. *Ross*, 189 Conn. 42, 454 A.2d 266 (1983), for the proposition that a request for permission to appear must be made at the time of judgment so that the accused shall not be forthwith discharged.

Neither § 54-96, nor any other statute or rule of practice, establishes any particular deadline within which the state must move for permission to appeal. We note

that none of the cases relied on by the trial court involved a dismissal at arraignment.

In our review of the transcript of the arraignment,[6] however, we find that the state had not only asked for "one week," but also referred the trial court to *State* v. *Middleton*, 20 Conn. App. 321, 566 A.2d 1363 (1989), where the trial court gave the state one week to indicate its intention to appeal. In addition, the state's request during the arraignment to "make a record, please" indicates that the state intended to appeal or at least to preserve a record in order to appeal; otherwise, there would be no reason to request permission to make such a record when the trial court had just dismissed the case.

"To acquire the right to appeal, the state must move for permission to appeal at the time of the judgment; *State* v. *Avcollie*, [supra, 174 Conn. 108]; or with 'reasonable promptness' thereafter, provided that it expresses its intent to appeal at the time of the judgment. *State* v. *Ross*, [supra, 189 Conn. 46–47]; *State* v. *Middleton*, [supra, 20 Conn. App. 326]. These cases limit the time period during which the state may move for permission to appeal." *State* v. *Tucker*, supra, 23 Conn. App. 563. "The rationale given was that '[t]he evil perceived in granting a tardy request of the state to appeal was the injustice of dragging back into court a defendant who had reasonably assumed that his discharge meant that he was a free man no longer charged with a crime.'" *State* v. *Middleton*, supra, 326–27.

It is true, as the defendant argues, that at the time of the judgment of dismissal the state did not explicitly express an intention to appeal. We conclude, nonetheless, that the state demonstrated its intention to appeal sufficiently to comply with § 54-96. The state immediately asked for "one week" in response to the court's

---

[6] See footnote 3.

ruling. Furthermore, it requested permission to make a record and cited *Middleton*. In addition, the state impliedly expressed its intent to appeal when it stated to the trial court that "[i]t's inappropriate to dismiss at this juncture." Finally, only six days later, the state filed a motion for permission to appeal.

Under these circumstances, the defendant was on adequate notice that the state sought "one week" to appeal, and planned to file a motion for permission to appeal within that time period. Thus, the defendant had no reasonable basis to assume at the time of dismissal that his discharge meant that he was a free person no longer charged with crimes. See id., 327, citing *State* v. *Ross*, supra, 189 Conn. 46. He could reasonably assume only that he was being released from custody without bond. We conclude, therefore, that the trial court abused its discretion in denying the state's motion for permission to appeal.

II

The state maintains that the trial court improperly dismissed the information on the basis of the failure of the police incident report to establish probable cause for the arrest. We conclude that the trial court improperly considered whether the evidence was legally obtained and we remand the case for a proper determination of probable cause.

"Dismissal of an information is a drastic action that is appropriate in cases where 'there was a need either to eliminate prejudice to a defendant in a criminal prosecution, where it was impossible to do so by imposition of lesser sanctions, or to deter a pattern of demonstrated and longstanding widespread or continuous official misconduct.' *United States* v. *Broward*, 594 F.2d 345, 351 (2d Cir.), cert. denied, 442 U.S. 941, 99 S. Ct. 2882, 61 L. Ed. 2d 310 (1979); *United States* v. *Fields*, 592 F.2d 638, 647 (2d Cir. 1978), cert. denied, 442 U.S.

917, 99 S. Ct. 2838, 61 L. Ed. 2d 284 (1979)." *State* v. *Bergin*, 214 Conn. 657, 672, 574 A.2d 164 (1990).

The trial court indicated that "the officer's statement of an assault [which] caused the officer to go to 178 Hazel Street [was] without foundation and not worthy of belief. The officers did not have a warrant; they did not see a crime being committed when they were on the street and this purported excuse for going to and entering this house was found to be a made-up excuse for breaking down the front door and entering the house. Nowhere in the report is there any investigation of an attack on a woman at 178 Hazel Street."

The trial court did not, either in its ruling or in its subsequent articulation, state that it was suppressing the evidence obtained by the police from the warrantless entry of the defendant's premises because the evidence had been unconstitutionally seized. It is apparent, however, that the trial court, in effect, suppressed that evidence and that the dismissal flowed directly from that suppression.

"First, Practice Book § 650 [now § 37-12] contemplates that the probable cause determination 'shall be made in a nonadversary proceeding, which may be ex parte, at which affidavits or testimony under oath may be received.' Such a proceeding, which ordinarily takes place upon arraignment . . . is hardly consistent with the process of constitutional adjudication required in deciding a motion to suppress evidence. Practice Book §§ 809, 811, 812, 813, 821 and 822 [now §§ 41-3, 41-5, 41-6, 41-7, 41-12 and 41-13] provide detailed procedures for implementing that process.

"Second, the purpose of Practice Book § 650 is to conform Connecticut's procedure with the mandate of *Gerstein* v. *Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), by providing an incarcerated defendant with a prompt postarrest judicial determination of prob-

able cause. See 4 L. Orland, Connecticut Practice, Superior Court Criminal Rules § 650. Such a proceeding is not a critical stage requiring appointed counsel. *Gerstein* v. *Pugh*, supra, 122. A judicial determination of the legality of a search or seizure is not within the scope of what that preliminary stage of the proceeding is intended to accomplish.

"Third, the purpose of the exclusionary rule is to deter illegal police conduct; see *State* v. *Brown*, 14 Conn. App. 605, 622, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988); and the limits on its application that flow from that purpose, namely, that it does not apply where the cost of suppressing reliable tangible evidence outweighs its deterrent benefit; see *United States* v. *Leon*, 468 U.S. 897, 906–907, 104 S. Ct. 3405, 82 L. Ed. 2d 677, reh. denied, 468 U.S. 1250, 105 S. Ct. 52, 82 L. Ed. 2d 942 (1984); suggest its inapplicability to a hearing under Practice Book § 650. Since the interest in deterring illegal police conduct is sufficiently protected by excluding illegally seized evidence at trial, no such suppression is required at the detention hearing under § 650.

"Finally, our Supreme Court has very recently noted 'the general rule . . . that constitutional questions are not properly raised in a probable cause hearing because such hearings are not adjudicatory in nature. See, e.g., Fed. R. Crim. Proc. 5.1, Notes of Advisory Committee on Rules; 2 W. LaFave & J. Israel [Criminal Procedure (1984) p. 263] § 14.4.' *In re Ralph M.*, 211 Conn. 289, 313, 559 A.2d 179 (1989). In that case, the court held that the trial court should not entertain motions to suppress at nonadjudicatory juvenile transfer hearings pursuant to General Statutes § 46b-127 (i). The same reasoning applies to a nonadjudicatory § 650 preliminary hearing." *State* v. *Middleton*, supra, 20 Conn. App. 328–30. "On a motion to dismiss an information, the proffered proof is to be viewed most favorably to the

state." *State* v. *Morrill*, 193 Conn. 602, 611, 478 A.2d 994 (1984).

The judgment of dismissal is reversed and the case is remanded for a proper determination of probable cause and for further proceedings according to law.

In this opinion the other judges concurred.