## State of Connecticut *v.* Frank Bellamy
## (2982)

Dupont, C.P.J., Hull and Borden, Js.

Argued May 7—decision released July 23, 1985

*Steven M. Sellers,* deputy assistant state's attorney, with whom, on the brief, was *James L. Radda,* deputy assistant state's attorney, for the appellant (state).

*Clarance J. Jones,* for the appellee (defendant).

BORDEN, J. The defendant was arrested pursuant to a warrant and charged in an information with the crime of harassment in violation of General Statutes § 53a-183. Upon the defendant's timely motion, the trial court dismissed the information on three separate bases: (1) there was no probable cause for the issuance of the warrant; (2) since the state's "offer of proof" showed that no violation of General Statutes § 53a-183 could have been committed, the information should be dismissed pursuant to General Statutes § 54-56; and (3) the defendant's alleged written communications, which formed the basis of the offense charged, were protected free speech. The state appealed, claiming that the court erred in each of these conclusions and that the information, therefore, should be reinstated. We agree.

I

Before we address the state's claims, it is necessary to resolve an issue involving our subject matter jurisdiction over this appeal. The defendant claims that this appeal by the state is not properly before us because the trial court denied the state permission to appeal, which is required by General Statutes § 54-96. We hold that, under the circumstances of this case, we do have subject matter jurisdiction over the appeal.

On March 22, 1983, the trial court granted the defendant's motion to dismiss and denied the state's prompt, oral motion for permission to appeal. On May 17, 1983, in response to a motion for review filed by the state, the Appellate Session of the Superior Court ordered the trial court to articulate the basis of

its denial of permission to appeal, in particular to specify the facts found, the principles of law applied to the facts and the reasons for its conclusions. On May 31, 1983, the trial court further articulated its decision by specifying the reasons for its granting of the motion to dismiss but not specifying its reasons for the denial of permission to the state to appeal. On June 28, 1983, the Appellate Session granted the state's motion for review and set aside the denial of permission to appeal. Through administrative oversight, however, notice of this decision was not sent to the proper assistant state's attorney handling the case. Upon learning of this, on January 18, 1984, this court reissued the notice of the action of the Appellate Session. The state thereafter promptly filed its appeal in this court.

It is true that, pursuant to General Statutes § 54-96, the permission of the trial court is a prerequisite to the right of the state in a criminal case to appeal, and that ordinarily the discretionary decision of the trial court will not be disturbed. *State* v. *Avcollie,* 174 Conn. 100, 109–110, 384 A.2d 315 (1977).[1] It is also true, however, that the statute does not preclude an appeal where the state promptly expressed its intention at the time of the judgment and the court's denial was so arbitrary as to be an extreme abuse of discretion. Id., 110.

Here, the state promptly requested permission to appeal when the trial court rendered its judgment. In responding to the mandate of the Appellate Session, the court offered no reasons for its denial of permission to appeal. The questions presented to the trial

---

[1] We do not consider that the amendment to Practice Book § 3096, effective July 1, 1978, lodging control over appeals in this court "from the time the appeal is filed, *or earlier, if appropriate,"* changes this rule. (Emphasis supplied.) The state's right to appeal is wholly statutory; *State* v. *Audet,* 170 Conn. 337, 341, 365 A.2d 1082 (1976); and the rules "obtain when there is a valid appeal because the rules regulate, but do not create, appeals." Id., 343.

court, and thus to this court, are by no means clear and simple, and are of some consequence. Implicit in the decision of the Appellate Session was the determination that the denial of permission to appeal was, under these circumstances, so arbitrary as to be an extreme abuse of discretion, a determination with which we agree. We conclude, therefore, that the appeal is properly before us.

## II

We agree with the state that the trial court erred in holding that the affidavit supporting the arrest warrant did not establish probable cause that the defendant committed the crime of harassment in violation of General Statutes § 53a-183. The applicable part of that statute provides as follows: "(a) A person is guilty of harassment when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by . . . any . . . form of written communication, in a manner likely to cause annoyance or alarm . . . ."

The affidavit, signed by Detective Robert J. Cappullo,[2] of the New Haven police department, provided essentially as follows: On August 5, 1982, Cappullo responded to a call from the East Shore Waste Water Treatment Plant, where he spoke with the complainant, Moshe Kopman, and his supervisor, Kenneth Maltese. Kopman and Maltese told him that on August 4, 1982, they discovered that seventy-four swastikas had been drawn on a pump sheet, which is a sheet of paper left out on a desk at the plant for the purpose of recording pump readings every two hours. Cappullo made a copy of the pump sheet, but could not reliably process it for fingerprints because everyone at the plant had access to it.

[2] The signature on the affidavit is difficult to make out but as best as it can be discerned is Robert J. Cappullo. The name does not appear elsewhere in the record and so we refer to the affiant as Cappullo.

The affidavit further recited that Kopman is an Orthodox Jew who displays himself as such by wearing a small cap on his head and by indicating his beliefs. Until recently, Kopman, who has worked at the plant for two years, worked on a different shift. He is the only Orthodox Jew employed at the plant; the only other Jew is not Orthodox and works on a different shift.

Cappullo attempted unsuccessfully to determine who had drawn the swastikas. No one had seen anyone draw them and no one admitted to having drawn them.

On August 8, 1982, Cappullo again responded to a complaint by Kopman by going to the plant. Kopman and Maltese had another pump sheet, dated August 6, 1982, which had nineteen swastikas drawn on it. They were drawn on the shift on which Kopman works. Cappullo made a copy of this pump sheet.

On August 12, 1982, Cappullo obtained information from Maltese that an employee on Kopman's shift knew who had access to the August 6, 1982 pump sheet between the time it was blank and the time it had the swastikas drawn on it. This employee was Nicholas S. Weted, who came to the police department and gave the following statement: On August 6, 1982, on the midnight shift, Weted put out a blank pump sheet. The defendant, also an employee of the plant, entered the room, picked up the sheet and sat down with it at the desk across from Weted. No one else was in the room. Weted left the room for less than one minute and remained right outside it. The wall of the room is all glass. Weted did not see anyone enter the room. Only the defendant was in the room. Weted reentered the room. The defendant was still at the desk with the sheet in front of him. A co-worker entered the room, and he and the defendant left the room. Weted looked at the

sheet and saw the swastikas drawn on it. Weted identified Cappullo's copy of the August 6, 1982 sheet as a copy of the same sheet.

Maltese told Cappullo that the defendant had been an employee for two years and had been acting erratically lately. Cappullo researched the swastika symbol and stated that it was originated in the 1920s by the German Nazi Party, a major premise of which was anti-Semitism.

The standard by which probable cause is gauged is less than the standard of whether a prima facie case is made out. "Instead, all that is required is that the affidavit, read in a common-sense manner, give objective evidence of a fair probability that proscribed activity has occurred." *State* v. *Heinz,* 193 Conn. 612, 617, 480 A.2d 452 (1984). In applying that standard we must give "substantial deference . . . to the decision of the judicial authority that issued the warrant." Id., 618.

It is not necessary to go through the specifics of the affidavit, item by item. Suffice it to say that, applying the standard articulated in *State* v. *Heinz,* supra, we conclude that the affidavit was sufficient to establish probable cause that the defendant, with the intent to harass, annoy or alarm Kopman, communicated with Kopman by means of the pump sheets with the swastikas on them, and that this was done in a manner likely to cause Kopman annoyance or alarm.[3] General Statutes § 53a-183 (a) (2).

### III

As an alternate ground of its decision the trial court relied on General Statutes § 54-56. That statute provides that the court "may, at any time, upon motion

---

[3] The trial court took issue with Cappullo's statement in the affidavit that the swastika symbol originated with the Nazi party. This inaccuracy aside, however, it cannot be doubted that the symbol today ordinarily invokes Nazism and virulent anti-Semitism.

by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

The court reasoned that, because the state's "offer of proof" indicated that no violation of General Statutes § 53a-183 (a) (2) could have occurred, invocation of General Statutes § 54-56 was appropriate. The state argues that the statute, which permits such a motion to dismiss "at any time," unconstitutionally collides with Practice Book §§ 815 (5) and 816,[4] which prohibit a defendant who has been arrested pursuant to a warrant from making such a motion. Thus, the state claims, the statute is in violation of the principle of separation of powers and must yield to the Practice Book rule. See, e.g., *State* v. *King,* 187 Conn. 292, 296–98, 445 A.2d 901 (1982).

We agree that the trial court erred by applying General Statutes § 54-56 in this case, but for reasons different from those advanced by the state. We conclude that General Statutes § 54-56 simply does not apply to this case. Therefore, we need not decide the constitutional claim of the state.

We note, first, that contrary to the court's assertion, the state did not make any "offer of proof," formally or informally, that the contents of the affidavit would constitute its entire evidence at a trial. Cf. *State* v. *Morrill,* 193 Conn. 602, 605, 478 A.2d 994 (1984). Thus,

---

[4] Practice Book § 815 (5) mirrors General Statutes § 54-56, by providing for a pretrial motion to dismiss grounded on "[d]efenses or objections based on the insufficiency of evidence or cause to justify the bringing or continuing of such information . . . or the placing of the defendant on trial . . . ."

Practice Book § 816, however, limits § 815 by providing that "[n]o defendant who has been . . . arrested pursuant to a warrant . . . may make a motion under [paragraph] (5) . . . of Sec. 815."

the court was not presented with all the evidence which could be marshalled by the state.

Although General Statutes § 54-56 has been in existence since 1921; see Public Acts 1921, c. 267, § 3; *State v. Carroll*, 13 Conn. Sup. 112 (1944); and has rarely surfaced in reported decisions, its purpose precludes its application to a situation in which a defendant, who has been arrested pursuant to a warrant, challenges before trial the sufficiency of the affidavit supporting the warrant. "What appears to be clear statutory language should not be read . . . to 'defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose.'" *Shelby Mutual Ins. Co.* v. *Della Ghelfa*, 3 Conn. App. 432, 438, 489 A.2d 398, cert. granted, 196 Conn. 805, 494 A.2d 903 (1985).

The purpose of General Statutes § 54-56 is "'to prevent unchecked power by a prosecuting attorney.' *State v. Carroll*, 13 Conn. Sup. 112 [1944]." *State* v. *Reinosa*, 29 Conn. Sup. 117, 118, 274 A.2d 452 (1970). This purpose does not apply where a judge has found probable cause and authorized the issuance of an arrest warrant. In such a case, the judicial authority's considered judgment has been interposed between the power of the prosecuting attorney and the rights of the defendant. The prosecutorial power is not unchecked; it has already been subject to the prior check of the judicial authority's "independent determination that probable cause exists as to each element of every crime charged." *State* v. *Heinz*, supra, 617. At least in the absence of a concession by the state that the evidence in the arrest warrant affidavit will constitute its entire proof at trial; cf. *State* v. *Morrill*, supra; General Statutes § 54-56 is an inappropriate basis on which to dismiss an information preceded by an arrest warrant.

This conclusion is buttressed by a careful reading of *State* v. *Morrill,* supra. In that case, the defendant moved to dismiss the information on the basis of insufficiency of the warrant affidavit, and on the separate basis of General Statutes § 54-56. Id., 603 and n.2. The trial court found the affidavit sufficient but dismissed the information on the basis of the statute because, it reasoned, the evidence recited in the affidavit, which the state conceded would be its entire case, would have been insufficient to sustain a guilty verdict as a matter of law. Neither the trial court nor the Supreme Court, on the subsequent appeal, considered Practice Book § 816. See footnote 3, supra.

The Supreme Court found error because it read the evidence recited in the affidavit, and the permissible inferences therefrom, as supporting a potential guilty verdict. Id., 611–12. We read *State* v. *Morrill,* supra, therefore, as standing for the proposition that, in the absence of an invocation of Practice Book § 816, reliance on General Statutes § 54-56 to dismiss an information which is preceded by an arrest warrant is appropriate if it is conclusively established that the court has before it all the evidence which the state will be able to produce at trial.

IV

This leaves for analysis the trial court's third ground of its decision, namely, that the writings allegedly made by the defendant were constitutionally protected speech. We agree with the state that the trial court erred by dismissing the information on this basis.

Much of our discussion in part III of this opinion applies here. The court erroneously assumed that the information in Cappullo's affidavit would be the state's entire case at a trial. There was no basis in the record to support such an assumption. Thus, the trial court

made this complex and sensitive constitutional determination in the absence of a full factual matrix.

The state offers two plausible bases on which the alleged writings of the defendant may not be protected as free speech.[5] Both require more of a factual development than the court permitted the state here.

The first is that the defendant's communications may ultimately be determined to be "fighting words," which are not constitutionally protected. See *State* v. *Beckenbach,* 1 Conn. App. 669, 678, 476 A.2d 591, cert. granted, 193 Conn. 806, 477 A.2d 806 (1984). Whether particular language constitutes fighting words, in constitutional parlance, depends not only on the language but on the full factual situation of its utterance. Id.

The second is that, because of the statutory requirements that the defendant act with the intent to harass, annoy or alarm and in a manner likely to cause annoyance or alarm, the communications at issue may have intolerably intruded on Kopman's privacy interests. " '[W]e are often "captives" outside the sanctuary of the home and subject to objectionable speech.' . . . The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen* v. *California,* 403 U.S. 15, 21, 91 S. Ct. 1780, 29 L. Ed. 2d 284, reh. denied, 404 U.S. 876, 92 S. Ct.

---

[5] A third basis offered by the state, namely, that what the defendant is charged with under the statute amounts to both speech and nonspeech combined in the same course of conduct; see, e.g., *United States* v. *O'Brien,* 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672, reh. denied, 393 U.S. 900, 89 S. Ct. 63, 21 L. Ed. 2d 188 (1968) (draft card burning); has less plausability, at least at this stage of the proceedings. It is difficult to view the drawing of symbols on paper, prosecuted pursuant to the section of the statute prohibiting communicating with another person with the requisite intent and in the requisite manner, as anything other than speech. Whether that speech is protected is, of course, a separate question.

26, 30 L. Ed. 2d 124 (1971); see also *Gormley* v. *Connecticut Department of Adult Probation,* 632 F.2d 938 (2d Cir. 1980), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980) (holding General Statutes § 53a-83 (a) (3), the harassment by telephone portion of the statute, constitutional). This determination also requires more facts than this record discloses.

We do not hold that the defendant's alleged writings were unprotected speech. Nor do we dismiss the constitutional claim that his speech was protected. See *Collin* v. *Smith,* 578 F.2d 1197 (7th Cir.), cert. denied, 439 U.S. 916, 99 S. Ct. 291, 58 L. Ed. 2d 264 (1978). We hold only that, although constitutional challenges invoking first amendment freedoms may sometimes be decided on the basis of facts other than those surrounding the person raising such a challenge; see *State* v. *Pickering,* 180 Conn. 54, 57–58 n.3, 428 A.2d 322 (1980); the development of the necessary factual matrix on which such a decision must be made was prematurely curtailed in this case. The meager factual record before the trial court precluded it from making a proper decision on that constitutional basis. See *United States* v. *Petrillo,* 332 U.S. 1, 9–12, 67 S. Ct. 1530, 91 L. Ed. 1877 (1947).

We do not reach the defendant's claims that the statute is unconstitutionally overbroad and vague, because of the defendant's failure to file a preliminary statement of issues presenting these claims as alternate grounds upon which the judgment might be affirmed. Practice Book § 3012 (a); see *State* v. *Torrence,* 196 Conn. 430, 434 and n.6, 493 A.2d 865 (1985). The rules of court apply to the defendant as well as to the state; see *State* v. *Martin,* 2 Conn. App. 605, 612A, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457 (1984), cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985); and we decline to decide issues raised, to the detriment of the state, the appellant here, in contraven-

tion of those rules. Id., 612B. The defendant is free, of course, to raise these claims in the course of the further proceedings following our remand.

There is error, the judgment is set aside and the case is remanded for further proceedings.

In this opinion the other judges concurred.

