[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Procedure
Pursuant to Practice Book § 41-8 and § 42-40,[1] the defendant, Leslie R. Wilson, moves to dismiss, or in the alternative for a judgment of acquittal as to, both counts of the long form information charging him with disorderly conduct in violation of General Statutes § 53a-182 (a)(2)[2] (count one) and breach of peace in violation of General Statutes § 53a-181 (a)(1)[3] (count two). Pursuant to Practice Book § 41-12, the defendant further moves to suppress his statements made to police officers after his arrest, arguing that his arrest was illegal. The defendant was charged under the statutes as the result of events that occurred on May 1, 2000, near the council chambers in the Torrington city hall whereby he allegedly stared at the victim, a council member, in a menacing and threatening manner while following her to remain in increasingly closer proximity to her and positioning himself so as to block her exit through certain doorways.
 I MOTION FOR JUDGMENT OF ACQUITTAL 
The state opposes the defendant's motion for a judgment of acquittal on all grounds asserted, arguing that such a motion made pretrial is procedurally improper. The court concurs.
Practice Book § 42-40 provides in relevant part; "After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon its own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty." Accordingly, because a motion for a judgment of acquittal cannot be decided prior to the presentation of all of the state's evidence at CT Page 16042 trial, the defendant's motion for a judgment of acquittal is denied.
 II INSUFFICIENCY OF EVIDENCE 
The defendant moves to dismiss count one charging him with violation of § 53a-182 (a)(2), arguing that he did not engage in offensive or disorderly conduct, or annoy or interfere with the victim, within the meaning of the statute. The defendant also moves to dismiss count two charging him with violation of § 53a-181 (a)(1), arguing that he did not engage in violent, tumultuous or threatening behavior in a public place. The state argues in opposition that (1) the defendant's insufficiency of the evidence claims cannot be resolved without a trial of these factual issues: (2) the defendant is procedurally barred from moving to dismiss count two prior to trial because a Superior Court judge round probable cause for the defendant's arrest for breach of the peace at his arraignment: and (3) sufficient evidence does exist to support the continued prosecution of both counts.
The state's procedural argument is without merit. Although the defendant states that his motion to dismiss is made pursuant to Practice Book § 41-8, he does not specify the subsection or subsections of that section on which he relies. The only subsections that could possibly authorize the defendant's motion to dismiss on the above stated grounds are subsections (5) and (9). These subsections allow a defendant to move to dismiss on the basis of "[i]nsufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial"; Practice Book § 41-8(5); or "[a]ny other grounds." Practice Book § 41-8(9). The rules of practice further provide, however, that a defendant who has been arrested pursuant to a warrant is prohibited from making a motion to dismiss based on subsections (5) and (9). See Practice Book § 41-9 ("No defendant . . . who has been arrested pursuant to a warrant may make a motion under subdivisions (5) or (9) of Section 41-8."); State v. Ellis,32 Conn. App. 849, 851-52, 632 A.2d 47 (1993); State v. Dills,19 Conn. App. 495, 497, 563 A.2d 733 (1989); State v. Bellamy,4 Conn. App. 520, 526, 495 A.2d 724 (1985). The rationale for this rule is that "where a judge has found probable cause and authorized the issuance of an arrest warrant . . . the judicial authority's considered judgment has been interposed between the power of the prosecuting attorney and the rights of a defendant. The prosecutorial power is not unchecked: it has already been subject to the prior check of the judicial authority's independent determination that probable cause exists as to each element of every crime charged." (Internal quotation marks omitted.) CT Page 16043State v. Dills, supra, 501.
The defendant in the present case was not arrested pursuant to a warrant. The state argues, however, that because the court, Matasavage,J., found probable cause to charge the defendant with breach of the peace at his arraignment, an independent judicial determination has already been made obviating the necessity of testing evidentiary sufficiency or cause by motion to dismiss. The problem with the state's argument is that the plain language of § 41-9 prohibits only such motions by defendants who have been arrested pursuant to a warrant. One Superior Court judge has already found, that § 41-9 simply has no application to situations involving warrantless arrests. State v. Luddy, Superior Court, judicial district of Litchfield. Docket No. CR 96 0090033 (October 31, 1997, Walsh, J.). The defendant therefore is not procedurally barred from moving to dismiss count two pursuant to § 41-8 (5) or § 41-8 (9).
Considering to the merits of the defendant's motion to dismiss, the court concludes that the motion should be denied. "On a motion to dismiss an information, the proffered proof is to be viewed most favorably to the state." State v. Morrill, 193 Conn. 602, 611, 478 A.2d 994 (1984). In the present case, the proffered proof consists of police reports and witness statements. Taking such evidence in the light most favorable to the state, the court finds that the state has proffered sufficient evidence at this time to avoid dismissal of both counts of the information. In addition, dismissal at this time would be improper since the state does not concede that the court has before it all of the evidence which the state will be able to produce at trial. See State v. Bellamy, supra,4 Conn. App. 527-28.
 III CONSTITUTIONAL ARGUMENTS A Vagueness 
The defendant moves to dismiss both counts, arguing that the statutes are unconstitutionally vague on their face and as applied. After careful review, the court denies the defendant's motion to dismiss.
 1 Standards 
CT Page 16044
"The purpose of the vagueness doctrine is twofold. The doctrine requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement. The United States Supreme Court has set forth standards for evaluating vagueness. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." (Citation omitted; internal quotation marks omitted.) State v.Indrisano, 228 Conn. 795, 802, 640 A.2d 986 (1994). In addition, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." (Internal quotation marks omitted.) Id., 803. "[W]here a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." (Internal quotation marks omitted.) Id. Therefore. "[i]f . . . the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." (Internal marks quotation omitted.) Id., 804. The "vagueness inquiry — whether facial or as applied — extends only to those portions of the statute that were applied to the defendant in this case." Id.
The standard for challenging the constitutionality of a criminal statute is a high one. "[L]egislative enactments carry with them a strong presumption of constitutionality, and . . . a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." (Internal quotation marks omitted.) State v. McMahon, 257 Conn. 544, 551,778 A.2d 847 (2001).
 2 Facial Vagueness a § 53a-182 (a)(2) 
Connecticut Supreme Court precedent establishes that the language of both statutes in question, namely, § 53a-182 (a)(2) and § 53a-181
CT Page 16045 (a)(1), have been saved from unconstitutional facial vagueness by the application of authoritative judicial gloss. Therefore, the defendant's motion to dismiss on this ground should be denied.
In State v. Indrisano, supra, 228 Conn. 795, our Supreme Court considered a void for vagueness challenge as to § 53a-182 (a)(2), which the court found to be impermissibly vague both as to the mens rea requirement in subsection (a) and as to the conduct proscribed in subdivision (2). First, as to the mens rea language of § 53a-182
(a). "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof," the court found this language to be impermissibly vague. Id., 801. The court saved the statute, however, by applying an interpretive judicial gloss: "[T]he mens rea language of § 53a-182 (a) can be formulated more precisely as follows: the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm. In order to sustain a conviction for disorderly conduct, the state must begin by demonstrating that the defendant had such a state of mind." Id., 810-11.
Second, the court found that the language of subdivision (2) of §53a-182 (a), "by offensive or disorderly conduct, annoys or interferes with another person," to be unconstitutionally vague on its face. Id., 815. To save the statute, the court again applied interpretive gloss "in order to provide constitutional content for the future" to both phrases of subdivision (2), namely, "offensive or disorderly conduct" and "annoys or interferes with another person." Id., 817. The court defined "offensive or disorderly conduct" as "conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears it or sees it." Id., 818. The phrase "annoys or interferes with another person" means "disturbs or impedes the lawful activity of another person." Id., 819.
"To summarize . . . the language of § 53a-182 (a)(2) — `by offensive or disorderly conduct, annoys or interferes with another person' — means: by conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears or sees it, disturbs or impedes the lawful activity of that person." Id. With these interpretive glosses, § 53a-182 (a)(2) is not unconstitutionally vague on its face. Id. The defendant's facial vagueness challenge to § 53a-182 (a)(2) must fail and his motion to dismiss count one on this ground is denied. CT Page 16046
 b § 53a-181 (a)(1) 
Following its decision applying a judicial gloss to § 53a-182
(a)(2) in State v. Indrisano, supra, 228 Conn. 795, the Supreme Court had occasion to review § 53a-181 (a). See State v. Wolff, 237 Conn. 633,668-71, 678 A.2d 1369 (1996). Noting that "[t]he statutory language setting forth the intent required for conviction of breach of the peace [pursuant to § 53a-181 (a)] is identical to the language in . . . § 53a-182 (a)"; id. 469; the court held that "[t]he need to apply interpretive gloss to § 53a-182 (a) that we perceived in Indrisano is equally present with regard to § 53a-181." Id., 670. Thus, "the mens rea language of § [53a-181] (a) can be formulated more precisely as follows: the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation or a feeling of anxiety prompted by threatened danger or harm. In order to sustain a conviction for [breach of the peace], the state must begin by demonstrating that the defendant had such a state of mind." Id. With this interpretive gloss, the mens rea language of § 53a-181 (a) is saved from constitutional vagueness problems. Id.
The remaining issue is whether the language of subdivision (1) of § 53a-181 (a). "[e]ngages in fighting or in violent, tumultuous or threatening behavior in a public place." is unconstitutionally vague. The court may "look for guidance to the construction given by [the] court to identical language contained in . . . § 53a-182, the disorderly conduct statute. In State v. Indrisano, supra, 228 Conn. 795, [the court was] called upon to interpret the parallel provision of § 53a-182
(a)(1). The elements of the two statutes are identical, except that § 53a-181 (a)(1), the breach of the peace statute, concerns behavior in a public place."[4] State v. Szymkiewicz, 237 Conn. 613, 618,678 A.2d 473 (1996). In construing subdivision (1) of § 53a-182 (a), the Supreme Court stated that "[t]he term `fighting,' by its plain meaning, involves physical force. The phrase `violent, tumultuous or threatening behavior' also refers to physical action. . . . [T]he Appellate Court . . . [has] construed `violent, tumultuous or threatening behavior' . . . to mean `conduct which actually involves physical violence or portends imminent physical violence.'. . . Similarly . . . the Appellate Session of the Superior Court read the term `tumultuous' in connection with its surrounding words, `violent' and `threatening,' and held that, because its meaning should be ascertained by reference to those associated words. `yelling and cursing unaccompanied by violent CT Page 16047 behavior is not prohibited by' § 53a-182 (a)(1). In accordance with these decisions, we conclude that the terms `fighting' and `violent' lend an aspect of physicality to the more nebulous terms `tumultuous' and `threatening.' Thus, we conclude that subdivision (1) of § 53a-182
(a) prohibits physical fighting, and physically violent, threatening or tumultuous behavior." (Citations omitted.) State v. Indrisano, supra,228 Conn. 811-12, citing State v. Lo Sacco, 12 Conn. App. 481, 491,531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987); State v.Duhan, 38 Conn. Sup. 665, 668, 460 A.2d 496 (1982), rev'd on other grounds, 194 Conn. 347, 481 A.2d 48 (1984). Further, the Supreme Court has "recognized that fighting words, because they do portend imminent physical violence or are likely to prompt imminent physical retaliation, have a sufficient aspect of physicality such that they can constitute a violation of § 53a-182 (a)(1). . . . Accordingly . . . speech can be proscribed not only when accompanied by actual physical conduct, but also when it can be identified as fighting words that portend physical violence." (Citation omitted.) State v. Szymkiewicz, supra,237 Conn. 619-20.
This judicial gloss given to § 53a-182 (a)(1) is equally applicable to the same language as used in § 53a-181 (a)(1) and saves the latter from unconstitutional vagueness. See id., 618. Accordingly, the defendant's facial vagueness challenge to § 53a-181 (a)(1) fails and his motion to dismiss count two on this ground is denied.
 3 "As Applied" Vagueness
The defendant move to dismiss both counts arguing that the statutes are unconstitutional as applied to the facts of his case. "To challenge successfully the vagueness of the statute as applied to the facts of his case, the defendant must prove that the policies advanced by the vagueness doctrine were violated in his case. Specifically, the defendant must show that a reasonable person could not have foreseen that the statute would be applied to his conduct, or that he was the victim of arbitrary enforcement practices." State v. Indrisano, supra, 228 Conn. 813.
The proffered proof in the present case establishes that the defendant arrived at a city council meeting after the meeting had concluded and stared and glared at the victim, a council member, in a menacing and threatening manner while following her to remain in increasingly closer proximity to her and positioning himself so as to block her exit through certain doorways. The court concludes that the language of both statutes as construed with the requisite authoritative glosses gave the defendant CT Page 16048 fair warning that his conduct might result in criminal liability. Accordingly, the statutes are not impermissibly vague as applied to the defendant's alleged conduct, and his motion to dismiss both counts on this ground is denied.
 B Freedom of Speech and Assembly 
The defendant moves to dismiss both counts, arguing that to prosecute him for attending a public meeting at the Torrington city hall and "looking" at the victim would violate his rights of freedom of speech and assembly under the state and federal constitutions. The defendant's arguments can be characterized as claiming that both the vagueness and overbreadth of the statutes in question impermissibly threaten to inhibit the exercise of constitutionally protected free speech and assembly both facially and as applied.[5] The state argues in opposition that no evidence whatsoever exists establishing any bona fide intent on the part of the defendant to exercise his constitutional rights to freedom of speech and assembly, and, therefore, his rights to such have not been implicated or infringed.
General principles of constitutional adjudication are relevant to an overbreadth challenge. Ramos v. Vernon, 254 Conn. 799, 812, 761 A.2d 705
(2000). "The essence of an overbreadth challenge is that a statute . . . that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the [freedom of speech]." (Internal quotation marks omitted.) Id. "[I]t is a necessary predicate to free speech analysis that the government's action has, in some way, implicated the free exercise of speech. State v. Ball,226 Conn. 265, 270, 627 A.2d 892 (1993). In other words, if the statute regulates conduct only, i.e., conduct which has no arguable expressive component, then such regulation does not impermissibly curtail freedom of speech." State v. Linares, 232 Conn. 345, 364 n. 15, 655 A.2d 737 (1993). "Free speech scrutiny, in order to protect expression adequately, must be triggered by a threshold finding that particular government regulation has the incidental effect of burdening expression." Id. "A single impermissible application of a statute, however, will not be sufficient to invalidate the statute on its face; rather, to be invalid, a statute must reach a substantial amount of constitutionally protected conduct." (Internal quotation marks omitted.) Id., 364. "A defendant may challenge a statute as facially overbroad under the first amendment, even if the defendant's conduct falls within the permissible scope of the statute, to vindicate two substantial interests: (1) eliminating the statute's `chilling effect' on others who fear to engage in the expression that the CT Page 16049 statute unconstitutionally prohibits; and (2) acknowledging that every defendant has the right not to be prosecuted for expression under a constitutionally overbroad statute." Id. As was the case in analyzing the defendant's vagueness challenges to § 53a-182 and § 53a-182
above, the court's overbreadth inquiry extends only to those provisions of the statutes with which the defendant was actually charged. Id., 348 n. 1. Finally, our Supreme Court has noted that is "has the power to construe state statutes narrowly to comport with the constitutional right of free speech." State v. Williams, 205 Conn. 456, 473, 534 A.2d 230
(1987): see also Ramos v. Vernon, supra, 814.
"To determine whether a statute reaches a substantial amount of constitutionally protected conduct, we must first interpret its language and determine the scope of its prohibitions." State v. Linares, supra,232 Conn. 365. As discussed previously, our Supreme Court has applied a judicial gloss to the mens rea language of both statutes making each applicable only if an individual acts with the specific and predominant intent to "cause inconvenience, annoyance or alarm." "Such a specific intent element can save an otherwise overbroad statute because such a requirement narrows the statute's applicability by excluding from its ambit those whose expression may have innocently or unknowingly caused a disturbance." Id., 375.
The Supreme Court's decision in State v. Indrisano, supra, 228 Conn. 795, provides some guidance. The court cited with approval the analysis used by the Kentucky Court of Appeals in construing a disorderly conduct statute similar to Connecticut's statute: "In order to ensure that the statute did not impede the exercise of constitutional rights, the Kentucky Court of Appeals . . . construed the statute as follows: `As reasonably construed, the statute does not prohibit the lawful exercise of any constitutional right. We think that the plain meaning of the statute, in requiring that the proscribed conduct be done "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," is that the specified intent must be the predominant intent. Predominance can be determined either (1) from the fact that no bona fide intent to exercise a constitutional right appears to have existed or (2) from the fact that the interest to be advanced by the particular exercise of a constitutional right is insignificant in comparison with the inconvenience, annoyance or alarm caused by the exercise.'. . . Coltenv. Kentucky, [407 U.S. 104, 108-109, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)], quoting Colten v. Commonwealth, 467 S.W.2d 374, 377 (Ky. 1971)." (Emphasis in original.) State v. Indrisano, supra, 807. Finding this analysis persuasive, our Supreme Court held that "[i]n order to ensure that the mens rea language of § 53-182 passes constitutional muster . . . [t]he intent denoted in § 53a-182 (a) is the predominant intent CT Page 16050 as defined by the Kentucky Court of Appeals. . . . To paraphrase, in order to support a conviction for disorderly conduct, the defendant's predominant intent must be to cause inconvenience, annoyance or alarm, rather than to exercise his constitutional rights." (Citation omitted.) Id., 809.
In the present case, the proffered evidence establishes that the defendant's predominant intent in appearing at city hall, staring and glaring solely at the victim while following her to remain in increasingly closer proximity to her and blocking her exit through certain doorways was to "cause inconvenience, annoyance or alarm" to the victim. No evidence suggests he was there to exercise his constitutional rights to free speech and assembly, or to participate in any way in the matters being addressed by the city council at the meeting. This is evident from the fact that he appeared after the meeting had adjourned, that he made no attempt to participate in any general discussions in the hallway, and that he made no attempt to speak to or associate with any other council members collectively or individually. Rather, the defendant focused his stares, glares and movements solely on the victim and her whereabouts.
Simply put, the mens rea requirement of both § 53a-182 (a) and § 53a-181 (a) that the state prove that the defendant's predominant intent was to "cause inconvenience, annoyance or alarm." rather than to "exercise his constitutional rights," ensures that the statutes do not impermissibly reach a substantial amount of constitutionally protected conduct, either facially or as applied. This is because conduct predominantly intended to cause "a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm"; id., 810; as well as conduct "which actually involves physical violence or portends imminent physical violence"; id., 813; or "physically threatening behavior"; id., 814; "is not the kind of expressive conduct that the first amendment is intended to protect." Id. The defendant's motion to dismiss both counts on the ground that their vagueness and/or overbreadth threatens to inhibit the exercise of constitutionally protected rights is denied.
 IV PUBLIC POLICY ARGUMENT 
The defendant moves to dismiss both counts, arguing that to prose cute him merely because the victim, a public official, became upset upon seeing him in attendance at a council meeting would be contrary to the public policy expressed in the Freedom of Information Act (FOIA), General CT Page 16051 Statutes § 1-200 et seq. The defendant argues that he had an absolute right to attend the city council meeting at issue because it is a "public agency" and the council meeting was a "meeting" within the provisions of FOIA. See General Statutes § 1-200 (1) and (2). The defendant further argues that FOIA provides an exclusive civil remedy when an attendee at a meeting becomes wilfully disruptive, specifically, such person or group may be removed from the meeting. See General Statutes § 1-232. Since he did not wilfully interrupt the meeting, the defendant argues, to prosecute him under § 53a-181 and § 53a-182 would circumvent the legislature's intent that his conduct not be punishable as a crime.
The court concludes that the provisions of FOIA have no application to the present case. No evidence whatsoever suggests that the defendant's presence and conduct at city hall on May 1, 2000, had anything to do with obtaining access to or disclosure of government records or proceedings. In fact, by the defendant's own admission, he did not attend the meeting at all but appeared minutes after the meeting had adjourned. Nor did the conduct for which the defendant was arrested have anything to do with an attempt to discuss "business" with members of the council in the hallway after the meeting had adjourned. By the defendant's own admission, he made no attempt to speak to any council members. Thus, the defendant's reliance on the holding of Meriden Board of Education v. Freedom ofInformation Commission, Superior Court, judicial district of New Britain. Docket No. CV 99 0496503 (June 6, 2000, Cohn, J.) (27 Conn.L.Rptr. 298), is misplaced under the circumstances of this case.
In short, where no evidence whatsoever establishes that the defendant's presence at city hall on the date in question had anything to do with bona fide attempts on his part to obtain access to government records or proceedings, the provisions of FOIA are inapplicable and thus the public policy underlying the act is not implicated. Further, as the defendant himself correctly realizes, § 1-232 is inapplicable because wilful disruption of the meeting is not part of the alleged factual basis for the charges against him under §§ 53a-181 and 53a-182. The defendant's motion to dismiss both counts of the information on the basis that such prosecution violates the public policy expressed in FOIA is denied.
 V MOTION TO SUPPRESS STATEMENTS 
The defendant moves to suppress his statements made to police officers following his arrest. The defendant argues that the arrest was illegal, and, therefore, the statements should be suppressed as fruit of the poisonous tree. The defendant does not independently analyze this claim, CT Page 16052 and therefore it can be assumed his contention that his arrest was illegal is based on his previous arguments set forth above. Based on the court's resolution of the previous issues, the court similarly finds that the defendant's arrest was not illegal. Accordingly, the defendant's motion to suppress his statements made to police officers following his arrest is denied.
So ordered.
The Court